**Rosa GROSS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 1, 1967.

J. B. Johnson, J. B. Johnson, Jr., Williamsburg, for appellant.

Robert Matthews, Atty. Gen., David Murrell, Asst. Atty. Gen., Frankfort, for appellee.

MONTGOMERY, Judge.

Rosa Gross was convicted of failing to yield a telephone party line for an emergency call in violation of KRS 438.170. She was fined $100. Appellant contends that no offense was committed under the statute and that her motion for a directed verdict should have been sustained.

The prosecuting witness, Gus Alsip, and Rosa Gross, the appellant, live on the Bee Creek Road, sixteen to twenty miles from Corbin. They live about three miles apart. There are two telephone lines serving the community. Alsip and Boyd Littrell are users of one party line; Rosa Gross is a user of the other party line.

On June 26, 1966, the condition of Alsip's wife, who had been suffering from a cancer, became critical. Alsip sought to use the telephone line to summon an ambulance. At the time appellant was making use of the party lines by talking to Boyd Littrell about fixing her plumbing.

Alsip's version of what happened follows:

"I got on the telephone and I said, 'Hang up, Boyd, this is an emergency.' He said, 'All right.' Mrs. Gross continued to stay on the telephone for some ten minutes. I didn't look to see what time it was— maybe it was a little more or·a little less. Anyhow she commenced with a lot of fool questions, asking me what emergency it was and what authority I had to give her to hang her telephone up; she was twenty-one and a teacher. My daughter came to the phone and she said, 'It's my mother and she's dying. Please hang up.' I don't know what Mrs. Gross said back to her. Anyhow, I said, 'Are you still on the phone?' She said, 'Yes, how does that grab you?' * * * When she wouldn't give me the line, my daughter came to the telephone and told her who it was, what her mother's name was, and she said, 'Please give us the telephone, Mrs. Gross.' Evidently she told her she would when she got ready because my daughter told her that wasn't no way

for her to act, holding the line and her mother dying. I got the phone and I said, 'Are you still on there, Rosie?' She said, 'Yes, how does that grab you,' and I hung the receiver up, and we were getting blankets to wrap her up to take her to the hospital in the car."

Alsip's testimony was corroborated by the testimony of his daughter and in part by the testimony of two of appellant's witnesses.

Finally, Alsip was able to summon an ambulance, which arrived about the time his wife died.

Appellant testified that the conversation lasted about a minute. She also sought to excuse her conduct by showing that Alsip could have hung up the telephone which would have automatically disconnected appellant's line in twenty seconds. There was no showing that Alsip knew of this method of obtaining the line, and it is immaterial since it is appellant's conduct that is in question.

Appellant's motion for a directed verdict made at the close of the testimony for the prosecution, and renewed at the close of all of the testimony, was denied. The basis of the motion was that her conduct did not constitute a violation of the statute.

In question is the construction of an Act entitled "An Act relating to emergency telephone communications." It was passed in 1962 and is referred to as KRS 438.160–190. KRS 438.160 defines "party line" and "emergency" as follows:

"(1) 'Party line' means a subscriber's line telephone circuit, consisting of two or more main telephone stations connected therewith, each station with a distinctive ring or telephone number.

"(2) 'Emergency' means a situation in which property or human life is in jeopardy and the prompt summoning of aid is essential."

KRS 438.170, under which appellant was prosecuted, provides a penalty for "Any

person who wilfully refuses to yield or surrender the use of a party line to another person for the purpose of permitting such other person to report a fire or summon police, medical or other aid in case of emergency, * * *." KRS 438.180 provides a penalty for anyone making a false representation of an emergency.

■ It is admitted that appellant and Alsip were using party lines. It is not considered material that they were on different party lines. When Alsip requested use of the party line to summon the ambulance, Littrell immediately yielded the line. Appellant refused to yield, and sought an explanation satisfactory to her that an emergency existed. It is evident from the statute that such conduct is expressly condemned. If the party using the line has to be convinced that there is an emergency, it may be too late by the time the party is convinced of the emergency. It is recalled that Alsip's wife died before the ambulance arrived.

■ By providing a penalty for anyone making a false representation of an emergency, it is clear that the General Assembly intended that a line should be surrendered immediately upon statement of emergency without further ado. This is the only construction that gives the Act any meaning. Under the facts presented here, there is no problem in saying that the testimony for the prosecution was sufficient and that the motion for a directed verdict was correctly overruled.

■ Appellant also argues that the trial court erred in refusing to permit cross-examination of Alsip concerning his statements to the effect that he would sue appellant and concerning her ownership of two or three farms. The court admonished the jury that such statements were incompetent and could have been competent only to rebut or contradict statements made by Alsip. Appellant contends that such statements show the motive for the prosecution.

From reading the testimony, there seems to have been some question as to whether Alsip had said "that he was going to see what he could do about putting a $10,000.00 bond under Rosa Gross" or that he would sue her for $10,000. At any rate, Linda Young was permitted to testify that Alsip had said "that he was going to sue Mrs. Gross for $10,000.00." Since appellant had benefit of this statement and Alsip had explained it, the error, if any, is considered harmless and is not reversible.

Judgment affirmed.

WILLIAMS, C. J., and HILL, MILLIKEN, PALMORE and STEINFELD, JJ., concur.

OSBORNE, J., dissents.

OSBORNE, Judge (dissenting).

I dissent from the majority opinion herein because I believe the statute KRS 438.160 only applies to persons on a common-party line, in situations where one party has it within his power to completely block anothers use of the line. In the present case, the Appellant could not block nor preclude Mr. Alsip's use of the line as she was not on the same line with him. If he had hung up his phone momentarily a cut off built into the system would have switched her out of the line, thereby clearing his line for all other calls. So, what was actually preventing Mr. Alsip from making a call was not the appellant but Mr. Alsip's ignorance of the system. To criminally punish one person for the ignorance of another hardly squares with the American concept of justice in my opinion.

For this reason, I dissent.